**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LEON WILLIAMS,

    Plaintiff,

v.                                  CASE NO. 8:04-CV-1011-T-30EAJ

CITY OF TAMPA, FLORIDA, et al.,

    Defendants.
_____/

# ORDER

**BEFORE THE COURT** is Plaintiff's Motion for Summary Judgment (Dkt. #103), Defendants Hillsborough County, Tom Alderman, Roberto Bustamonte, Mike Lewandowski and Tom Laughlin's Motion for Summary Judgment (Dkt. #106), Defendant City of Tampa's Motion for Final Summary Judgment (Dkt. #108), and Defendants William Darrow, Michael Mitcham and Adalberto Pereira's Motion for Final Summary Judgment (Dkt. #110).

## Background

In his Third Amended Complaint[1] (Dkt. # 98), Plaintiff alleges violations of his rights to procedural due process and equal protection under the Fourteenth Amendment, as well as a claim of malicious prosecution in violation of the Fourth Amendment. Plaintiff's claims

---

[1] By order entered on November 13, 2006 (Dkt. #116), the Court found that Plaintiff's Third Amended Complaint did not alter the Second Amended Complaint (Dkt. #70) in any substantial manner. Accordingly, the Court held that Plaintiff's Motion for Summary Judgment (Dkt. #103), all Motions for Summary Judgment raised by Defendants (Dkts. #106, #108, #110), and all affidavits filed by all parties in response to the Second Amended Complaint would be taken by the Court as applying to the Third Amended Complaint.

arise from the following facts related to separate investigations conducted by Hillsborough County and the City of Tampa[2]:

**Hillsborough County Investigation**

Plaintiff was licensed by Defendant Hillsborough County (the "County") as a building contractor. In January 2001, Plaintiff entered into a contract to perform home improvements at a private residence located on Nundy Avenue in Gibsonton, Florida (the "Nundy property"). During the course of construction, the homeowners, Glenn and Teresa Pulver, filed a Complaint Affidavit to the Development Services Division of the County alleging various problems with the project. As a result of this complaint, Defendants Roberto Bustamonte ("Bustamonte")[3] and Michael Lewandowski ("Lewandowski")[4] visited the Nundy property on July 24, 2001, where they observed various violations of the Hillsborough County Construction Code Ordinance (the "Code"). At that time, Lewandowski issued Plaintiff a Notice of Violation. On or about August 24, 2001, Bustamonte and Lewandowski met with Plaintiff at the Nundy property to review the violations. On November 13, 2001, Bustamonte and Lewandowski met with the homeowner at the Nundy property to review the existing Code violations. While there, Bustamonte and

---

[2] These facts are derived from exhibits attached to Plaintiff's Memorandum of Facts and Law in Support of Plaintiff's Second Amended Complaint (Dkt. #71), Plaintiff's Third Amended Complaint (Dkt. #117) and the Defendants' statements of material facts contained in their Motions for Summary Judgment and attachments thereto (Dkts. #106, #108, #109, #110, #111, #112, #113) which Plaintiff has not disputed.

[3] At the time of these events, Bustamonte was employed as a Codes Compliance Investigator I for the Development Services Division of the Planning & Growth Management Department of Hillsborough County, Florida.

[4] At the time of these events, Lewandowski was employed as a Chief Building Inspector for the Development Services Division of the Planning & Growth Management Department of Hillsborough County, Florida.

Lewandowski observed additional Code violations. Lewandowski issued Plaintiff another Notice of Violation for the additional violations and posted the Notice at the Nundy property. A "hold" was placed on Plaintiff's contractor's license in May 2002[5] by Bustamonte at the request of Defendant William Darrow, a Construction Investigator for the City of Tampa, pending resolution of criminal cases filed with the City of Tampa pursuant to an Interlocal Agreement.[6] A hearing on the aforementioned violations at the Nundy property was ultimately scheduled before the Hillsborough County Building Board of Adjustments, Appeals & Examiners (the "Board") for December 17, 2002. Plaintiff was provided notice of the hearing by letter dated November 7, 2002, sent by certified mail, return receipt requested. Plaintiff accepted the notice and signed the return receipt on November 14, 2002. Plaintiff failed to appear at the hearing.[7]

At the hearing, Bustamonte presented four allegations against Plaintiff related to the various Code violations at the Nundy property.[8] At the conclusion of the hearing, the Board

---

[5] Plaintiff has submitted evidence that demonstrates that a hold was placed on his license by Bustamonte based on information received from Darrow during the pendency of the investigations into criminal cases filed with the City. *See* Dkt. #105, Ex. 28. There is a question as to the exact date the "hold" went into effect. According to Bustamonte's Answers to Plaintiff's First Interrogatories (Dkt. #105, Ex. 25), the County placed a hold on Plaintiff's license on May 19, 2002. Other evidence submitted by Plaintiff shows an effective date of May 15, 2002. *See* Dkt. #105, Ex. 28.

[6] The County has authority to suspend or revoke a contractor's license issued by the County. *See* Fla. Stat. § 489.131.

[7] The minutes of the hearing reflect that Adam Gormly, Attorney for the Board, stated that he had spoken with Plaintiff on December 16, 2002, and that Plaintiff had indicated that he would attend the hearing. *See* Dkt. #112, Ex. 3. Notwithstanding, Plaintiff did not appear at the hearing on December 17, 2002.

[8] These allegations were:

(1) [Plaintiff] abandoned a construction project by terminating work on the project for a period of thirty (30)days without notifying the prospective owner and the building official from August 27, 2001, to November 9, 2001, in violation of Code Ordinance 98-2, Section 108.6.1(11);

voted unanimously in favor of disciplinary action against Plaintiff. By order entered on January 9, 2003, the Board revoked Plaintiff's building contractor's license.[9] A copy of the Board's Order was mailed to Plaintiff at his last known address but was returned as unclaimed. Plaintiff did not appeal the Board's order and did not request a rehearing.

---

(2) Gross negligence occurred when [Plaintiff] placed the entire wight of the second floor truss 1/4" on a 2'x4' ledger nailed to bearing wall in violation of Code Ordinance 98-2, Section 108.6.1(13)(c);

(3) Incompetence occurs when a person lacks ability to discharge a required duty. This is noted by the numerous Code violations on this project, in violation of Code Ordinance 98-2, Section 108.6.1(13)(d); and

(4) [Plaintiff] allowed a violation of this Code to go uncorrected for more than thirty (30) consecutive days (August 27, 2001, to November 9, 2001), in violation of Code Ordinance 98-2, Section108.6.1(19).

(Dkt. #112, Ex. 1).

[9] The Order of the Board stated, in pertinent part, as follows:

THEREFORE, on a motion made and seconded the Board voted unanimously in favor of disciplinary action against Leon Williams, d/b/a Williams Professional Group, and it is hereby:

ORDERED that:

1. Leon Williams, d/b/a Williams Professional Group, Certificate Number RR0060111 be revoked.

2. The Board of Adjustment, Appeals and Examiners ordered restitution based on the findings of negligence, incompetence and abandonment. It is further recommended that Glenn and Teresa Pulver be allowed to file a claim with the Florida Construction Industries Recovery Fund in the amount of $49,638.00.

3. The Florida Construction Licensing Board be notified of this Board's action and it is recommended they take the same action.

4. In accordance with Florida Statute, Chapter 489.131(7)(d), the Department of Business and Professional Regulation, Mr. Leon Williams or Glen [sic] and Teresa Pulver may challenge the recommendation for penalty made to the Florida Construction Industry Licensing Board. Such challenge must be made to the Florida Construction Industry Licensing Board within sixty (60) days of the order of this Board.

5. In accordance with Florida Statute, Chapter 489.131(7)(e), failure to challenge the recommendation to the Florida Construction Industry Licensing Board within the time period specified shall constitute a waiver of right to a hearing before that Board. A waiver of right to a hearing before the Board shall be deemed an admission of the violation and the penalty recommended shall become a final order according to the procedures developed by the Board rule without further Board action.

(Dkt. #112, Ex. 4).

**City of Tampa Investigations**

During the course of the County proceedings, the City of Tampa (the "City") received complaints related to two other construction projects undertaken by Plaintiff. On or about February 6, 2002, the City of Tampa Construction Services Department (the "Department") received a complaint from Larry Milan and Angelia Alphonso (the "Milan property")[10] related to residential contracting services they received from Plaintiff for a building addition to their home. On or about February 28, 2002, the Department received a complaint from Kirk Worthy (the "Worthy property")[11] related to residential contracting services he received from Plaintiff. Defendant William Darrow ("Darrow"), a Construction Investigator for the City, was assigned to investigate these complaints.[12] As part of the investigation, Darrow asked Defendant Adalberto Pereira ("Pereira"), a City Building Inspector, to perform a building inspection at the Milan and Worthy properties. Pereira inspected both properties and prepared Inspection Reports on each which concluded that the initial bids on these projects were intentionally low and that the contractor (i.e., Plaintiff) should have known he could not complete the projects for the amount he bid. Darrow received and reviewed Periera's reports. Darrow also took oral and written statements from Larry Milan, Angelia Alphonso and Kirk Worthy and collected evidence (i.e., the contract between the

---

[10] The original contract between Milan and Plaintiff was signed on August 22, 2001, for a room addition to be completed by December 22, 2001, for $27,600.00. *See* Dkt. #71, Ex. 3.

[11] Kirk Worthy contracted with Plaintiff on November 20, 2001, for a family room addition to be completed on or before February 2, 2002, for $13,000.00. *See* Dkt. # 71, Ex. 1.

[12] Darrow was assisted in the investigation by Defendant Michael Mitcham. *See* Dkt. #108, Ex. 4.

homeowners and Plaintiff and proof of payments made by the homeowners to Plaintiff) related to the complaints.

After collecting and reviewing all relevant information, Darrow concluded that there was probable cause to believe that Plaintiff had violated Florida law pursuant to Florida Statutes §§ 817.034 and 812.014.[13] Darrow prepared Requests for Prosecution in the form of Criminal Report Affidavits based on his findings related to the Milan and Worthy properties which he forwarded to the Hillsborough County State Attorney's Office for review to determine if that office would initiate prosecution. The State Attorney's Office subsequently filed an Information against Plaintiff charging him with organized fraud and grand theft. Plaintiff was arrested on these charges.[14]

## Standards of Review

To state a cause of action under §1983, Plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48-50, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). In addition, Plaintiff must allege and establish an affirmative causal connection between a defendant's conduct and the

---

[13] Darrow's Criminal Affidavit Reports charged Plaintiff with devising a Scheme to Defraud in violation of Fla. Stat. § 817.034 and Grand Theft in violation of Fla. Stat. § 812.014 based on allegations relating to "frontloading" construction contracts as to the funds to be paid in relation to dates of completion of the projects and intentional underbidding. *See* Dkt. #71, Exs. 9, 10.

[14] Plaintiff states in his Motion for Summary Judgment that these charges were ultimately dropped. *See* Dkt. #103, p. 12. A review of the docket in the underlying state case shows that a Notice of Nolle Prosequi was filed on April 28, 2004.

constitutional deprivation. *Fischer v. Ellegood*, 2006 WL 2425421 at *3 (M.D. Fla. Aug. 21, 2006) *(citing Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001); *Swint v. v. City of Wadley*, 51 F.3d 988 (11th Cir. 1995); *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994)).

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Court. 2548, 2552, 91 L. Ed. 2d 265 (1986). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Court. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A fact is "material" if it may affect the outcome of the case under the applicable substantive law. *See id.*

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings. Instead, the nonmoving party must respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably

drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. *See Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

**Discussion**

**COUNT ONE**

In the first claim of his Third Amended Complaint, Plaintiff raises a procedural due process claim[15] based on allegations that his building contractor's license was suspended by the Board in May 2002 without notice or a hearing. Plaintiff claims that on or before July 6, 2001, Defendants Tom Laughlin ("Loughlin"), Tom Alderman ("Alderman"), Bustamonte and Lewandoski interfered with the business relationship between himself and Glenn Pulver. He asserts that these four Defendants combined and conspired[16] in a criminal investigation with Carl Johnson[17], Darrow, Mitcham, Pereira and the City of Tampa that resulted in Plaintiff being charged with fraud and grand theft. Plaintiff further alleges that Bustamonte

---

[15] In its Order addressing Plaintiff's Second Amended Complaint (Dkt. # 70) and Defendants' various Motions to Dismiss (Dkts. #72, #73, #74) entered on January 27, 2006 (Dkt. #90), this Court determined that Plaintiff's allegations raised in Claim One were properly addressed as a procedural due process claim rather than as a substantive due process claim as presented by Plaintiff.

[16] Plaintiff has not alleged an independent claim of conspiracy in his Third Amended Complaint and the Court will not address this issue.

[17] Carl Johnson, named by Plaintiff as a City of Tampa Supervisor, is not a defendant in this action.

was involved and had knowledge that Plaintiff was being charged by the City employees and that Bustamonte "convinced other authority the Plaintiff's license should be suspended." He asserts that enforcement of the County Construction Code caused him injury.

In response to Plaintiff's allegations, Defendants Hillsborough County, Alderman, Bustamonte, Lewandowski and Loughlin ("the Hillsborough County defendants") and Defendants City of Tampa, Darrow, Mitcham and Pereira ("the City defendants") assert that Plaintiff's procedural due process claim must fail because of the availability of adequate state remedies that Plaintiff failed to pursue. The City defendants further assert that neither the City nor its employees had the authority to revoke or suspend Plaintiff's contractor's license. Accordingly, the City defendants did not have a legal duty to provide Plaintiff notice and/or a hearing prior to revocation of his contractor's license by the Board.

The United States Supreme Court has held that a violation of an individual's procedural due process rights may give rise to a § 1983 claim. *See McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994); *Zinermon v. Burch*, 494 U.S. 113, 125-26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Procedural due process "requires that the state provide fair procedures and an impartial decision maker before infringing on a person's interest in life, liberty, or property." *Id.* at 1561. It is not the deprivation of a protected interest that causes a violation; rather, "[i]t is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Price v. City of Ormond Beach, Florida*, 2006 WL 1382096 at *4 (M.D. Fla. May 19, 2006) (*citing Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir.

2000); *McKinney*, 20 F.3d at 1557 (internal quotation omitted)). A § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Price*, 2006 WL 1382096 at *4 (*citing Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006)). To support the element of constitutionally inadequate process, a plaintiff must allege that the state failed or refused to make available a means to remedy the deprivation or that those remedies were inadequate. *Id.* (*citations omitted*). Thus, if adequate state remedies were available, but a plaintiff failed to avail himself of them, he "cannot rely on that failure to claim that the state deprived him of procedural due process. *Id.* at *5 (*citing Cotton*, 216 F.3d at 1331).

In his Third Amended Complaint, the gravamen of Plaintiff's claim appears to be that he did not receive notice or a hearing prior to the hold being placed on his contractor's license in May 2002.[18] In his answers to Plaintiff's interrogatories, Bustamonte averred that the County placed a hold[19] on Plaintiff's contractor's license at the request of Darrow and,

---

[18] In his Third Amended Complaint, Plaintiff does not challenge the adequacy of the December 2002 proceedings that led to the disciplinary hearing before the Board and the ultimate revocation of his license. In their motions for summary judgment, the Defendants focus their arguments on the December 2002 disciplinary proceedings rather than the May 2002 hold.

[19] Specifically, Bustamonte stated in his Answers to Plaintiff's First Interrogatories as follows:

6. Please assert if Hillsborough County or the City of Tampa provided the Plaintiff with notice, prior to placing a hold on the ("Williams") Plaintiff [sic] license as described on the inserted typed statement in Paragraph No.1 above.

A: Bustamonte states that Hillsborough County placed a hold on Williams [sic] contractor's license on 5-19-02 at the request of William Darrow; in compliance with all relevant policies, codes and statutes, Hillsborough County did not provide notice To [sic] Williams of the hold.

7. Please assert if Hillsborough County or the City of Tampa provided the Plaintiff with a hearing prior to

in accordance with all relevant policies, codes and statutes, did not provide a hearing prior to entering the hold.[20]  *See* Dkt. #105, Ex. 25.

Plaintiff equates a "hold" to a suspension.  Plaintiff does not cite any statutory basis for this assumption, nor does he provide any legal authority to demonstrate a hold amounts to a deprivation of a protected property interest in his license.  Plaintiff does not allege that he was unaware of the hold at the time it was allegedly entered in May 2002, nor does he claim that he applied for a building permit under his contractor's license but was denied at any time between May 2002 and December 2002 when his license was revoked after the disciplinary hearing before the Board.  Put simply, he does not allege that he suffered any injury or deleterious effects from the hold placed on his license.  He does not allege that he attempted to challenge the entry of the hold in any way, nor does he claim that there was no procedure by which he could seek review of this action.  Moreover, Plaintiff has failed to show that he exhausted the state remedies available to him prior to filing the instant federal action.[21]  Even assuming, *arguendo,* that a hold has the same implication and effect as a

---

       inactivating and placing a hold on his license as described in the inserted typed statement in Paragraph No. 2 above.

       A: To the extent "inactivate" and "hold" are intended to mean the same thing, Bustamonte states that Hillsborough County complied with all relevant policies, codes and statutes by not providing a hearing prior to placing a "hold" on Williams' license.

(Dkt. #105, Ex. 25.)

[20] There is no indication what policies, codes or statutes this action was based upon.

[21] In its Order addressing Plaintiff's Second Amended Complaint (Dkt. # 70) and Defendants' various Motions to Dismiss (Dkts. #72, #73, #74) entered on January 27, 2006 (Dkt. #90), the Court accepted Plaintiff's allegation that "all remedies have been exhausted."  Considering this, together with the other allegations presented as to Claim One in the Second Amended Complaint, the Court determined that such allegations were sufficient to survive a motion to dismiss.  However, the Court clearly stated in its Order that "[a]t the summary judgment stage, Plaintiff must show why the existing remedies under state law were not sufficient to provide due process for someone in [Plaintiff's] alleged

suspension of a license, Plaintiff has failed to state a valid procedural due process claim.

"[P]rocedural due process violations do not become complete 'unless and until the state refuses to provide due process.'" *McKinney,* 20 F.3d at 1562 (11th Cir. 1994) (*citing Zinermon*, 494 U.S. at 123, 110 S.Ct. At 983). Plaintiff has not offered any evidence to show that he was entitled to notice or a hearing before a hold could be entered.  However, even if Plaintiff suffered a procedural deprivation by the Defendants, he has not suffered a violation of his federal procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation.  *McKinney*, 20 F.3d at 1563.  Both the Hillsborough County Code and Florida law provide procedures for challenging a local jurisdiction enforcement body's penalty against an aggrieved contractor.  *See* Fla. Stat. § 489.131(7); Hillsborough County, Fla., Construction Code Ord. 98-2, §108.6.4 (2001). Thus, Florida has provided remedies for the procedural deficiencies Plaintiff complains of, and, because Plaintiff has made no allegations in his Third Amended Complaint that the State has refused to remedy the deprivations he alleges or that he even attempted to avail himself of such remedy, he has failed to state a federal due procedural due process violation.  *See Price*, 2006 WL 1382096 at *5 (*citing Cotton*, 216 F.3d at 1331).  Accordingly, Defendants are entitled to summary judgment on Count One.

---

position, to wit: a contractor whose license was wrongfully terminated."  *See* Dkt.# 90, p. 3.  Despite this directive, Plaintiff has failed to make this requisite showing here.

**COUNT TWO**

In Count Two, Plaintiff asserts a claim of malicious prosecution. Plaintiff previously asserted this claim is his Second Amended Complaint (Dkt. #70), alleging that the Defendants caused him to be unlawfully arrested. In its Order entered on January 27, 2006, the Court determined that, to the extent that such allegations may have stated a possible malicious prosecution claim against some of the Defendants, it need not analyze this potential state law claim. This Court further found that Plaintiff had not and could not assert a substantive due process claim against these Defendants for the acts described and dismissed the claim with prejudice.

In his Third Amended Complaint now before the Court, Plaintiff attempts to reallege the malicious prosecution claim. He attempts to resurrect this state law claim by characterizing it as a Fourth Amendment violation, asserting that his arrest violated his right to be free from unreasonable seizure. Plaintiff offers no evidentiary support for such a claim. Though couched in different terms, this claim is essentially the same as that presented in the Second Amended Complaint that this Court has already dismissed with prejudice. Accordingly, this claim will again be dismissed with prejudice.

**COUNT THREE**

In Count Three, Plaintiff asserts an equal protection claim alleging that Defendants Darrow, Mitcham and Pereira[22] unequally applied Florida Statute § 489.126.[23] He alleges

---

[22] In his Motion for Summary Judgment (Dkt. #103), Plaintiff also asserts his equal protection claim against Defendants Bustamonte and the City of Tampa, as well as Carl Johnson who is not a named defendant in this case. For the reasons stated *infra* in the Court's analysis of the equal protection claim, Bustamonte and the City are entitled to

these Defendants "chose this particular course of action because of its adverse affects (sic) prevented the Plaintiff from continuing practicing [sic] contracting as others in the practice," and that he "was treated differently than others similar [sic] situated contractors that the City of Tampa Construction Investigators have received complaints [sic]." Plaintiff further alleges that the Defendants "selected a course of 'selected prosecution' for intentional and purposeful discrimination" and that such selection was made in bad faith.

To prevail on this type of equal protection claim based on a facially neutral statute, Plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that Defendants unequally applied the facially neutral statute for the purpose of discriminating against Plaintiff. *See Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006); *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996); *E & T Realty v. Strickland*, 830 F.2d 1107, 1112-13 (11th Cir. 1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988) (*citing Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) ("The unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) ("The Equal Protection Clause

---

judgment as a matter of law on this claim.

[23] Section 489.126 refers to money received by contractors. Plaintiff does not cite any particular subsection of this statute as support for his claim.

of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."). To qualify as "similarly situated" under the first part of this test, an individual must be "prima facie identical in all relevant respects." *Homelife Communities of Henry, Inc. v. City of McDonough, Ga.*, 2006 WL 2539492, at *3 (N.D. Ga. Aug. 31, 2006) (*citing Campbell*, 434 F.3d at 1314; *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)).

In the instant case, Plaintiff has produced no evidence to support his equal protection claim. First, he has failed to specifically identify in his Third Amended Complaint any similarly situated individuals from whom he was treated differently. To establish this first element of an equal protection claim, Plaintiff must identify other building contractors licensed by Hillsborough County who conducted business in the City of Tampa who were also investigated by the City for violations of fraud and grand theft pursuant to Fla. Stats. §§ 817.034 and 812.014 but were not ultimately charged with these offenses. This Plaintiff has failed to do. His evidence of similarly situated contractors arises from the Answers to Interrogatories by Darrow, Mitcham and Pereira attached to his Motion for Summary Judgment. *See* Dkt. #103, Exs. 21, 22, 23, 34. In their Answers, the Defendants provided the names of ten contractors about whom the City of Tampa had received complaints between January 1, 2002, and December 31, 2002.[24] Plaintiff specifically alleges only that

---

[24] In response to Plaintiff's Interrogatories related to other contractors about whom the City had received complaints, Defendants Darrow, Mitcham and Pereira stated as follows:

he "was treated differently than other similar [sic] situated contractors that the City of Tampa Construction Investigators have received complaints," and that "other contractors similary [sic] situated have not generally been prosecuted because of conduct of the type forming the basis of charges against the Plaintiff." *See* Dkt. #98.  Plaintiff does not allege nor does he offer any evidence to show that any of the other named contractors charged with the same offenses as he were not prosecuted in the same manner.  Moreover, in his response to interrogatories from the City, Darrow, Mitcham and Pereira, Plaintiff plainly states in his sworn answers that he believes none of the other named contractors was maliciously

---

12. Please give names below of "ten contractors" the City of Tampa building department received complaints from January 1, 2002-December 31, 2002.

A: Frank Harris
   Louis Heit
   Jose Perez
   John Avery
   Ken Henriquez
   Jeff O'Neil
   Keith Powers
   James Sams
   Jose Martinez
   Richard Chad

(Dkt. #103, Exs. 21, 22, 23).

The Court notes that Plaintiff has filed in support of his Motion for Summary Judgment William Darrow's Responses to Plaintiff's Second Interrogatories propounded on or about March 20, 2006.  *See* Dkt. #105, Ex. 34.  In his sworn answers, Darrow averred as follows:

1. Please assert names of the contractors listed in paragraph no. 12 - shown in your First Interrogatories - that was investigated and charged with Organized Fraud and Grand Theft based on charges initiated by William Darrow and Michael Mitcham.

A: Frank Harris - Organized Fraud and Grand Theft
   Keith Powers - Organized Fraud and Grand Theft
   Jose Perez - Grand Theft.

(Dkt. #105, Ex. 34).  Notwithstanding, Plaintiff does not argue that he was similarly situated to either Harris or Powers.

prosecuted for the same offense with which he was charged.[25] Accordingly, Plaintiff has failed to make a prima facie showing that he was similarly situated to any identifiable contractor. "Different treatment of dissimilarly situated persons does not violate the Equal Protection Clause." *E & T Realty*, 830 F.2d at 1109. Given Plaintiff's failure to satisfy the first element of this claim, the Court need not address whether he has demonstrated purposeful discrimination by the Defendants. *See Strickland*, 74 F.3d at 265.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment (Dkt. #103) is DENIED;

2. Count Two of Plaintiff's Third Amended Complaint is DISMISSED WITH PREJUDICE;

3. Defendants Hillsborough County, Tom Alderman, Roberto Bustamonte, Mike Lewandowski and Tom Loughlin's Motion for Summary Judgment (Dkt. #106) is GRANTED;

4. Defendant City of Tampa's Motion for Final Summary Judgment (Dkt. #108) is GRANTED;

---

[25] In his response to the Defendants' Interrogatories to Plaintiff Leon Williams from City of Tampa, Darrow, Mitcham and Pereira, Plaintiff averred as follows:

> 7. Based on the response to #5 and 6 above, please describe how each person listed was treated differently by the City of Tampa or its Defendant employees than you were.
>
> A: It is my belief that none of these contractors was maliciously prosecuted for organize [sic] fraud and grand theft for the same alleged act, with both charges being predicated on a violation of a state statute when none of the statute provision [sic] had been violated.

(Dkt. #108, Ex. A)

5. Defendants William Darrow, Michael Mitcham and Adalberto Pereira's Motion for Final Summary Judgment is GRANTED; and

6. The Clerk is directed to enter judgment for all Defendants and close this case.

**DONE** and **ORDERED** in Tampa, Florida on December 15, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel/Parties of Record

F:\Docs\2004\04-cv-1011.msj 103.wpd